IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM BRIGHT, #413-592 :

    Plaintiff :

v. : CIVIL ACTION NO. JFM-16-2528

WEXFORD HEALTH SOURCES, INC. :
DR. ROBUSTIANO BARRERA
KIMBERLY MARTIN :
MARIA LEWIS
CARLA BUCK :
TIFFANY BENNETT
DR. ROY CARLS :
STEPHEN RYAN
LLOYD HOTT :
BEVERLY McLAUGHLIN
DENNIS MARTIN :
BRENDA REESE
                                                           :

    Defendants

## MEMORANDUM

William Bright, a self-represented litigant formerly incarcerated at the Western Correctional Institution in Cumberland, Maryland ("WCI"),[1] filed a civil rights complaint under 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"),[2] as supplemented, claiming: (1) he has been denied heart and blood pressure medications by defendants Barrera, Lewis, Kimberly Martin and Carla Buck; (2) defendant Carls has failed to remove a broken orthopedic

---

[1] Bright has been released from custody and resides in Hyattsville, Maryland. ECF 59.

[2] The ADA was enacted in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," 42 U.S.C. § 12101(b)(1), and "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." *Id.* § 12101(b)(2). Title II of the ADA prohibits public entities, including "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government," *id.* § 12131(1), from discriminating "by reason of" disability against a "qualified individual with a disability." *Id.* § 12132. Although Bright references the ADA in his complaint based on his "mental disability" (ECF 1 at p. 5), the court finds no nexus between his alleged mental disability and the health care provided by prison medical personnel.

screw; (3) a treatment rendered by defendants Ryan and Hott caused severe burns that have become infected; (4) defendant Reese will not permit medical staff to provide him antibiotics to fight the infection; and (5) defendant McLaughlin prescribed medication that caused an allergic reaction. ECF No. 1 at 1-5 and ECF No. 3 at p. 3.[3]

Defendants Carls, Ryan, Lott, McLaughlin, Dennis Martin, and Wexford Health Sources, Inc. were dismissed on July 28, 2016. ECF 6. The remaining defendants, Barrera, Lewis, Kimberly Martin, Buck, and Reese, now seek to dismiss the case or, alternatively, move for summary judgment. ECF 38. Bright opposes the dispositive motion (ECF 44), and defendants have filed a reply to the opposition response.[4] ECF 49. After review of the papers filed, the court finds a hearing on the pending matters unnecessary. See Local Rule 105.6 (D. Md. 2016).

## Standard of Review

Because matters outside the pleadings are presented in defendants dispositive motion, it shall be considered a motion for summary judgment. Fed. R. Civ. P. 12(d). Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

---

[3] This opinion references the pagination assigned by the court's electronic docketing system.

[4] Defendants also move to strike Bright's pleadings ECF 61-63, as they do not conform to Fed. R. Civ. P. 15, and each was filed without either the opposing party's consent or leave to amend granted by this court. ECF 64. The pleadings shall be stricken.

2

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Background

The medical defendants include Registered Nurses Kimberly Martin, Carl Buck, Tiffany Bennett, and Brenda Reese; Licensed Practical Nurse Maria Lewis; and Dr. Robustiano Barrera. As previously noted, Bright alleges that he was denied heart and blood pressure medications by Barrera, Lewis, Martin, and Carla Buck between December 4, 2015 and December 18, 2015. Bright also alleges that Reese instructed nursing staff to deny him antibiotics to fight the infection allegedly suffered due to burns incurred during post-surgical physical therapy. Bright seeks $250,000,000.00 in damages for alleged violations of his Eighth Amendment rights.

## Analysis

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173

(1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) citing *Wilson v. Seiter*, 501 U.S.294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it. . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences. .. To lower this threshold would thrust federal courts into the daily practices of local police departments." *Grayson v. Peed*, 195 F.3d 692, 695- 96 (4th Cir. 1999).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839- 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted

4

punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) quoting *Farmer* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted. *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000); citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

The uncontroverted medical record[5] demonstrates that Bright, who is in his late 40s, received constitutionally adequate medical care and that his own misconduct made delivery of that care difficult for prison health care providers. Bright's medical history includes diabetes, hypertension, and chronic ankle pain stemming from a 2006 fracture. While incarcerated, Bright was seen regularly in the hypertension chronic care clinic and was prescribed Minoxidil,[6] Norvasc,[7] and Linisopril.[8] Medical providers found him routinely non-compliant with medical recommendations, and Bright was often verbally combative, aggressive, and uncooperative toward his treating medical providers. Barrerra Aff. at ¶ 6.

On September 8, 2015, Bright's three blood pressure medications, Minoxidil, Norvasc and Lisinopril, were renewed through December 8, 2015. *Id.*, ¶ 7. Bright received these medications through December 8, 2015, when they expired. *Id.*

---

[5] Relevant medical records are filed at ECF 40. Dr. Barrera's Affidavit, which incorporates those records, is found at ECF 38-5.

[6] Minoxidil is used to treat hypertension. *See* https://www.drugs.com/cdi/minoxidil.html.

[7] Norvasc also is used to treat hypertension. *See* https://www.drugs.com/norvasc.html.

[8] Lisinopril also is used to treat hypertension. *See* https//www.drugs.com/lisinopril.html.

On December 8, 2015, Bright was to be seen by Vincent Siracusano, M.D. for a scheduled mental health medication management visit, but refused to attend the appointment. *Id.*, ¶ 8. One day later, on December 9, 2015, he was to be seen by Registered Nurse Practitioner Beverly Mclaughlin, a chronic care provider who could review and renew his prescriptions. Again, he refused to attend the visit and a release of responsibility form was completed. Bright was rescheduled to be seen in one month. *Id.*, ¶ 9.

On December 11, 2015, Bright filed a sick call slip, but made no mention that he was not receiving his hypertension medications. *Id.*, ¶ 11. On December 13, 2015, he stopped Registered Nurse Heather Richie during her segregation housing rounds to report that he was not receiving his hypertension medications. Bright was reminded of his refusal to attend his chronic care appointment on December 9, 2015, but reported that he did not refuse, but rather corrections staff did not bring him to his medical visit. He was reassured that his medications would be renewed and reported no adverse side effects from not receiving his hypertension medication. *Id.*, ¶ 10.

On December 13, 2015, Bright filed a sick call slip informing medical staff that was not receiving his hypertension medications. *Id.*, ¶ 13. On December 14, 2015, he told Registered Nurse Katrina Opel during her medical rounds that he had not received hypertension medications in nine days, but reported no adverse effects. *Id.* Opel informed the Nurse Manager. *Id.*

On December 15, 2015,[9] Bright's chart was updated to reflect that hypertension medications were renewed by Dr. Barrera. *Id.*, ¶ 14. He began receiving the medications

---

[9] Dr. Barrera's Affidavit lists this date as December 15, 2016. ECF 38-5 at p. 4, ¶ 14. Based on the medical record, ECF 40 at p. 17, it is apparent that the December 15, 2016 date is a typographical error. Medications were renewed on December 15, 2015.

on December 18, 2015. *Id.* Neither Bright's complaint nor his medical record reflect that he suffered actual injury as a result of the delay in renewing these medications.

Bright's claim regarding treatment with antibiotics fares no better. On June 17, 2016, he was seen by Registered Nurse Tara Cottrell complaining of burns on his left foot caused by a TENS unit applied during a post-surgical physical therapy session earlier that day.[10] Cottrell's nurse manager instructed that silvadene[11] cream be applied to the area and covered with nonstick pads and gauze wrap. These instructions were followed, and Bright was given ibuprofen and an ice pack. *Id.*, ¶ 16.

On June 19, 2016, Bright refused to be seen for his scheduled wound care visit. *Id.*, ¶ 17. Between June 20, 2016 and July 25, 2016, Bright was seen 32 times for treatment of his leg wound. *Id.*, ¶ 18. The wound never appeared infected and was healing appropriately. *Id.*

On July 3, 2016, Bright was seen by Registered Nurse Burnice Steuber for a wound care visit. *Id.*, ¶ 19. Despite his demands, he was not provided internet access. He reported that he was not using Bactrim[12] on his wound, because he did not think it would work. Steuber informed Dr. Barrera that the wound was draining more than normal, and Barrera ordered Bright be given Augmentin,[13] an antibiotic, for 14 days. Due to

---

[10] A TENS device, or transcutaneous electrical nerve stimulator, is used to stimulate pulses across the skin and along nerve strands to reduce pain signals from reaching the brain. It also helps the body produce higher levels of its own natural painkillers known as endorphins and helps prevent muscle atrophy. *See* http://www.tensunits.com/.

[11] Silvadene is an antimicrobial medication used to topically treat wounds. *See* https://www.druqs.com/pro/silvadene.html.

[12] Bactrim is a topical antibiotic cream used to treat wounds. *See* https://www.druqs.com/bactrim.html. Bright was prescribed Bactrim on March 14, 2016 to assist in the healing of his surgical leg wounds.

[13] Augmentin is an oral penicillin antibiotic. *See* https://www.drugs.com/search.php?searchterm-augmentin&a-1.

7

previous non-compliance, Barrera ordered the antibiotic be observed while taking the pills to ensure they were taken. *Id.*

On July 17, 2016, the course of medication was completed. *Id.*, ¶ 20. On July 19, 2016, Bright was seen by Martin and Barrera for stitch removal unrelated to his foot wound. The foot wound was also examined, showing only a small amount of drainage and no odor. The area was cleaned and dressing applied, and a second two-week regimen of Augmentin was prescribed. *Id.*, ¶ 21.

On August 2, 2016, Bright received his last dose of Augmentin. *Id.*, ¶ 23. On August 4, 2016, he was seen by Nurse Practitioner Peggy Mahler for wound care. *Id.*, ¶ 24. His dressing was not changed because Mahler lacked sufficient supplies to apply new dressing. Bright was told his wound would take longer to heal due to his diabetes and was advised that more antibiotics would not be given without need, because prolonged administration of antibiotics reduces their efficacy. *Id.* Bright continued to be seen regularly for wound care at least through August 25, 2016, the date of the most recent medical record provided by defendants. *Id.*, ¶ 25.

Bright counters defendants' version of events with the fact that he never signed a release of responsibility and that defendants have taken advantage of his mental and emotional disabilities. ECF 44 at 3-5. He also seeks to expand his lawsuit to name additional correctional personnel whom he accuses of stealing his medical records. *Id.* at p. 4. None of these arguments is sufficient to change the outcome of this case. Bright's own conduct facilitated the brief delay in renewal of his blood pressure medications, and Bright cannot attribute actual injury as a result. The recalcitrance in refusing to apply antibiotic cream, combined with Bright's diabetes, may have impeded the healing of his foot wound, which defendants then treated successfully with

oral antibiotics. No violation of the Eighth Amendment is apparent from the uncontroverted record, and defendants' motion for summary judgment shall be granted.

## Conclusion

A separate order implementing the content of this memorandum follows.

_4/13/16_
Date

J. Frederick Motz
United States District Judge

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2017 APR 13 PM 12: 04
CLERK'S OFFICE
AT BALTIMORE
BY_____DEPUTY